Filed 4/3/25  Calusian v. Alpine Meadows Homeowners Assn. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CARMEN CALUSIAN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ALPINE MEADOWS HOMEOWNERS ASSOCIATION, <br><br> Defendant and Respondent. | B332369 <br><br> (Los Angeles County Super. Ct. No. 21STCV23285) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank Tavelman, Judge.  Reversed and remanded.

Yarian & Associates and Levik Yarian for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Corinne C. Bertsche; Law Offices of Scott C. Stratman and J. Michael McClure for Defendant and Respondent.

Kevin Tahmasebi (Kevin) died in a fire in the garage of the condominium he and his family were renting from Gohar Amirkhanyan (Amirkhanyan). Kevin's wife and son, plaintiffs and appellants Carmen Calusian (Calusian) and Calvin Tahmasebi (Calvin) (collectively, plaintiffs), sued Amirkhanyan and her homeowners association, Alpine Meadows Homeowners Association (Alpine Meadows) for damages in connection with Kevin's death. Alpine Meadows moved for summary judgment and argued (1) it owed plaintiffs no duty to maintain the common areas of the property because plaintiffs were not members of the association, and (2) it had no notice of any dangerous condition in the garage that led to the fire. We consider whether the trial court erred in granting the summary judgment motion because Alpine Meadows did not establish the absence of a dispute of material fact on both issues.

## I.  BACKGROUND

### A.  *Kevin's Death and the Ensuing Complaint*

In 2015, Amirkhanyan purchased a home within the Alpine Meadows gated community, which operates pursuant to documents including its Covenants, Conditions, and Restrictions (CC&Rs). Amirkhanyan resided in the property from September 2016 through late 2019. Amirkhanyan did not experience any electrical, garage, or plumbing problems while she lived in the property.

In December 2019, Amirkhanyan leased the property to plaintiffs and Kevin. On April 13, 2020, Calvin discovered Kevin lying on the floor of the condominium's garage and saw a small fire nearby. Calvin attempted to pull Kevin away from the fire, but he felt a shock when he did so. Calvin then called 911 and he

2

was instructed to open the garage door, which he did. At that point, the garage was engulfed in flames and Kevin died while still inside.

After Kevin's death, plaintiffs sued Amirkhanyan and Alpine Meadows for negligence, premises liability, and wrongful death. Plaintiffs' negligence cause of action alleged defendants breached their duty of care by failing to properly disclose, repair, construct, or maintain the premises, specifically the electrical and plumbing systems in the garage. Plaintiffs' premises liability cause of action alleged defendants negligently owned, maintained, managed, used, controlled and/or operated the premises by failing to use reasonable care to protect those in the garage. The wrongful death cause of action alleged defendants negligently owned, managed, or operated the premises so as to directly and proximately cause Kevin's death.

### B.    *Alpine Meadows's Motion for Summary Judgment*

Amirkhanyan settled the claims against her, and Alpine Meadows moved for summary judgment. Relying on *Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, Alpine Meadows argued that where a negligence claim is premised on a homeowners association's duty to maintain common areas, the duty arises out of the Davis-Stirling Act and the CC&Rs, not common law principles of negligence, and such a duty is owed only to members of the association. Alpine Meadows also argued, in connection with all the claims against it, that it was not responsible for the maintenance of the electrical and plumbing systems on the property and it was not aware of and had no notice of any issues related to the garage or the electrical and plumbing systems.

In support of its motion, Alpine Meadows submitted a declaration from Amirkhanyan; excerpts from the depositions of Calvin, Amirkhanyan, and Calusian; a copy of the CC&Rs; and a copy of the lease between Amirkhanyan, Kevin, and plaintiffs.

1.    *The CC&Rs*

According to the CC&Rs, Alpine Meadows is a California nonprofit mutual benefit organization formed to govern the Alpine Meadows property, which is a "common interest development" as defined by the Civil Code.  Every unit owner is a member of the Association.  Each "unit" of the condominium "consist[s] of the airspace bounded by the walls, ceiling, windows, doors and floors of the space outlined in the Condominium Plan.[1] The Unit . . . also consist[s] of electrical outlets, conduit, and cable outlets which are physically within the airspace of the Unit and plumbing pipe and fixtures to the extent that said items penetrate through the Common Area walls, ceilings and floors into the Condominium airspace . . . ."  The "common area" of the property is comprised of the portions of the property "not constituting the [u]nits."

Each condominium owner is responsible for maintaining or paying for repair of their own unit, which includes "the airspace contained within the interior unfinished surfaces of the perimeter walls . . . ."  Each owner is also responsible for "[u]tility installations, or portions thereof, located within the Unit that the

---

[1]    Alpine Meadows did not submit a copy of the condominium plan.  Plaintiffs purported to do so, but the trial court sustained an objection to the document they submitted and that ruling is unchallenged on appeal.

4

Owner has exclusive use of, including, without limitation: air conditioning units, boilers, wall heaters, plumbing fixtures and pipes, electrical and lighting fixtures which are located entirely within the Owner's Unit."

"The Association (not individual Owners) is solely responsible for maintaining Common Areas and facilities, improvements, and landscaping in a neat, orderly and safe manner, and making necessary repairs, modifications and improvements where appropriate."

### 2. Other evidence

In her deposition, Calusian testified everything at the property seemed fine when her family first moved in, she could not recall anyone ever coming to the property to make a repair, and she never asked Amirkhanyan to make any repairs. Calusian also did not notice any leaks in the garage area while she was living at the property. She was not aware of any electrical problems, including in the garage, and did not engage in discussions with any family members about electrical problems in the garage. She did not have any complaints regarding the property while she lived there, and she did not make any complaints to Alpine Meadows. Calvin similarly testified at deposition that he was not aware of any electrical problems in the garage prior to the relevant date and did not think there had been any discussions of such a problem.

Amirkhanyan's declaration averred she did not experience any electrical, garage, or plumbing problems when she resided at the property from September 2015 to December 2019. She did not receive any notice from Kevin or plaintiffs from the commencement of their tenancy to the date of Kevin's death

5

regarding any complaints or problems involving the property. Amirkhanyan did not notify Alpine Meadows or its property manager of any concerns regarding the property during the relevant time period. Nor was she aware or advised of any code violations relating to the property.

### C. *Plaintiffs' Summary Judgment Opposition*

Plaintiffs' opposition to the motion for summary judgment argued Alpine Meadows was responsible for the building's electrical system and had both constructive and actual notice of problems with its buildings. Specifically, plaintiffs argued their case was about the "common area" of the condominium, which they asserted included the building's wires and conduits.

Plaintiffs argued Alpine Meadows owes a duty of care to its residents, not just the owners of its properties, and thus owed a duty of care to plaintiffs. Plaintiffs contended Alpine Meadows's reliance on *Martin, supra*, 173 Cal.App.4th 1024 was misplaced because their claims (unlike those in *Martin*) were neither derivative of, nor related to, the contract between Alpine Meadows and Amirkhanyan. Plaintiffs asserted Alpine Meadows had both constructive and actual notice of issues with the building because it knew the roofs of many of its buildings were leaking and required repair and because it knew the condominiums did not have Ground Fault Circuit Interrupters (GFCIs). Plaintiffs did not dispute that they did not notify Amirkhanyan, Alpine Meadows, or Alpine Meadows's property management company about any complaints regarding, or make any requests for repairs to, the garage, roof, or electrical system for the condominium they leased.

Submitted with plaintiffs' opposition were declarations from: their attorney; Calusian; Shane Foster, an electrical engineer; Allan Snyder, an expert in premises liability; and Victor Mabry, a fire investigator. Alpine Meadows objected to much of the evidence plaintiffs submitted, including their evidence supporting the assertion that Alpine Meadows had notice of the relevant issues with the property.

### D.    The Trial Court's Ruling

The trial court granted Alpine Meadows's motion for summary judgment. Relying on *Martin*, it found Alpine Meadows satisfied its burden to show it owed no duty of care to plaintiffs because they were not members of the homeowners association. The court also observed plaintiffs had not identified any case holding a homeowners association owes a legal duty to one who rents property from a member. In addition, the trial court made evidentiary rulings sustaining the majority of Alpine Meadows's objections. Among the evidentiary objections sustained were (1) Alpine Meadows's objections to the portion of plaintiffs' counsel's declaration in which he asserted "his investigation" confirmed Alpine Meadows obtained numerous permits to repair building roofs and retained the services of a company to fix the roof of the property in 2013, and (2) Alpine Meadows's objection to expert Snyder's opinion that Alpine Meadows was on notice of electrical problems because it was aware many roofs were leaking and the buildings did not have GFCIs.[2]

---

[2]    Plaintiffs do not challenge any of the trial court's evidentiary rulings on appeal.

## II. DISCUSSION

The trial court erred in granting summary judgment. While an individual who is not a member of a homeowners association may not sue to enforce the association's CC&Rs, that prohibition does not relieve the association of the general duty to act with ordinary care in its management of the portions of the property for which it is responsible. Additionally, Alpine Meadows did not satisfy its burden of demonstrating—as a matter of law—that it lacked notice of any alleged defect or dangerous condition in the property. Though Alpine Meadows submitted evidence establishing neither Amirkhanyan nor her tenants notified it of any problems with the property, Alpine Meadows adduced no evidence to establish it did not have actual notice via any other means or lacked constructive notice of any issue. Accordingly, the burden of proof never shifted to plaintiffs to demonstrate a genuine issue of material fact on that score.

### A. *Summary Judgment and the Standard of Review*

A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact . . . .'" (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179; see Code Civ. Proc., § 437c, subd. (c).) "'A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action.' [Citation.] 'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . .'" [Citation.]" (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225-226.)

8

"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122.) "In deciding whether a material factual issue exists for trial, we 'consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence.' (Code Civ. Proc., § 437c, subd. (c).)" (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52.)

> ### B.  *Plaintiffs' Complaint Does Provide a Proper Basis to Conclude Alpine Meadows Owes Them a Duty of Care*

All of plaintiffs' causes of action sound in negligence and have the same core elements: a legal duty of care, a breach of that duty, and proximate cause resulting in injury. (*Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 924; *Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 685.)

Alpine Meadows, "[a]s a condominium project . . . is a common interest development subject to the provisions of the Davis-Stirling Common Interest Development Act . . . ." (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81; see also Civ. Code, § 4000, et seq.) A common interest development is managed by an association. (Civ. Code, § 4800.) "The duties and powers of a homeowners association are controlled both by statute and by the association's governing documents." (*Ostayan v. Nordhoff Townhomes Homeowners Assn., Inc.* (2003) 110 Cal.App.4th 120, 127.)

9

Relevant statutory authority states that "unless otherwise provided in the declaration of a common interest development, [a homeowners] association is responsible for repairing, replacing, and maintaining the common area." (Civ. Code, § 4775, subd. (a)(1).) The CC&Rs here do not deviate from this rule; they state Alpine Meadows "(not individual Owners) is solely responsible for maintaining Common Areas and facilities, improvements, and landscaping in a neat, orderly and safe manner, and making necessary repairs, modifications and improvements where appropriate."

Plaintiffs' complaint alleges Alpine Meadows had a duty to provide plaintiffs with a safe premises. Amirkhanyan, not Alpine Meadows, owned the unit plaintiffs rented. But Alpine Meadows, not Amirkhanyan, was "solely responsible for maintaining" the common areas of the building—and, practically, it can be seen as the landlord of those areas. (See *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 499 [a homeowners association is, for "practical purposes," the landlord of a condominium project].) Thus, as to the common areas, Alpine Meadows, like any other individual or entity, owes a general duty of care. (See, e.g., Civ. Code, § 1714, subd. (a); *Soto v. Union Pacific Railroad Co.* (2020) 45 Cal.App.5th 168, 177 ["One who owns, possesses or controls land has a duty to act reasonably to protect others from a dangerous condition on the property"].)

*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024 is not to the contrary. In that case, the Court of Appeal held an individual who is not an owner of a condominium unit and is thus not a member of the corresponding homeowners association lacks standing to enforce the CC&Rs or the Davis-Stirling Act. (*Id.* at 1033-1036.) The court in *Martin*

10

also affirmed the trial court's order sustaining a demurrer to the plaintiffs' cause of action for negligence, which alleged the homeowners association owed a duty to the plaintiffs "as residents and members." (*Id.* at 1037.)  In doing so, the court specified that the duty the plaintiffs pled was being breached was the association's duty to maintain the common grounds, not any duty that arose out of common law negligence principles.  (*Id.* at 1037.)

While we do not take issue with *Martin*'s holding—that a non-member cannot enforce an association's CC&Rs—the basis for plaintiffs' claims in this case differs from the nature of the claims in *Martin* in an important way: plaintiffs' claims do not depend on the CC&Rs to establish a duty of care Alpine Meadows allegedly breached.  Though the complaint alleges defendants (which included, at the time of filing, both Alpine Meadows and Amirkhanyan) breached their duty of care to plaintiffs by failing to maintain the premises, it neither asserts plaintiffs were owed that duty because they were members of the association nor expressly relies on the CC&Rs.  This is contrasted with *Martin*, where the claim was expressly based on the contractual relationship between member and homeowners association, and with other similar cases upon which Alpine Meadows relies. (*Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1011 [complaint alleged actual controversy between plaintiffs and defendants concerning rights and duties pursuant to CC&Rs]; *Kovich v. Paseo Del Mar Homeowners' Assn.* (1996) 41 Cal.App.4th 863, 866 [complaint alleged homeowners association had duty to disclose information to prospective purchasers]; see also *Titus v. Canyon Lake Property Owners Assn.* (2004) 118 Cal.App.4th 906, 911 [concluding a homeowner's

11

association did not owe a duty to a non-owner resident after considering the factors in *Rowland v. Christian* (1968) 69 Cal.2d 108—not by reasoning a non-owner lacked standing to bring a negligence claim].)

The *Rowland* considerations do not counsel in favor of limiting or extinguishing the duty of care here.[3]  Neither foreseeability considerations nor policy concerns support concluding condominium common areas under the control and maintenance of a homeowners association are a "no man's land" where those who traverse can suffer all manner of peril or harm without remedy so long as they are merely renters or visitors, not condominium owners.  Rather, Alpine Meadows, like any other homeowners association that is solely responsible for maintaining common areas, is responsible for injuries suffered *in those areas* by unit owners and non-owners alike that are attributable to the want of ordinary care.

Because we hold Alpine Meadows does owe plaintiffs a duty of care as to the building's common areas, and because there

---

[3]     The considerations identified in *Rowland* are: "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland, supra,* 69 Cal.2d at 113; see also *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 166 [foreseeability is the "'most important'" consideration].)

appears to be a factual dispute over whether Kevin's death can be attributed to the common areas of the building over which Alpine Meadows was responsible, granting summary judgment was error.

Alpine Meadows nevertheless argues it cannot be liable because it lacked notice of any dangerous condition on the property. If a dangerous or defective condition of property which causes an injury was "'brought about by natural wear and tear, or third persons, . . . or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises.'" (*Oldenburg v. Sears, Roebuck & Co.* (1957) 152 Cal.App.2d 733, 742-743.)

Even taken on its own terms, the problem with Alpine Meadows's argument is that the evidence the association submitted in connection with its summary judgment motion was limited; the evidence established Alpine Meadows had no notice of any dangerous condition or problem with the common areas from only three sources: plaintiffs, Kevin, and Amirkhanyan. There is no evidence in the summary judgment record, however, to support the broader assertion Alpine Meadows made to justify judgment in its favor: that Alpine Meadows was not aware, or should not have been aware, of any dangerous conditions or problems from *any* source. In other words, the absence of any complaint from Amirkhanyan or her tenants does not establish that Alpine Meadows did not otherwise have notice, whether

13

actual or constructive, of dangerous conditions or problems with the common areas.

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.  Plaintiffs shall recover their costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


HOFFSTADT, P. J.


MOOR, J.